IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14-CV-00182-RLV-DSC

| | |
|---|---|
| MID-SOUTH INVESTMENTS, LLC, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| STATESVILLE FLYING SERVICE, INC., ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**BEFORE THE COURT** is Defendant Statesville Flying Service, Inc. ("SFS") Motion *In Limine* to Exclude Photos and other Discovery. (Doc. 37). On May 11, 2016, the Court notified the parties of its general intention to hear the evidence subject to its later exclusion. (Doc. 51). A bench trial was conducted on May 18 and 19, 2016. This Court now enters the following order **GRANTING** Defendant's Motion *In Limine* to Exclude Photos and other Discovery. (Doc. 37).

I. **MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S "NEW" PHOTOGRAPHS AND EVIDENCE PRODUCED AFTER THE CLOSE OF DISCOVERY**

Defendant's motion relates to pre-accident photographs. Defendant maintains that these pre-accident photographs were not disclosed prior to the expiry of the discovery period of October 30, 2015. Defendant maintains that it was not even aware of the existence of said pre-accident photographs until February 16, 2016, at the deposition of Plaintiff's experts. Copies of the photographs were not provided until February 29, 2016. However, even these copies did not have the metadata preserved. Defendant maintains that the metadata that would be contained in whatever format the picture is stored in is pertinent because it will identify the date of the picture and the camera used. Defendant eventually was given access to the metadata for some of the pictures on April 27, 2016, which showed that the photographs were taken between July and

1

August 2012. Defendant was also given *additional* photographs on April 27, 2016, not previously disclosed. Defendant maintains that the late production of these photographs because it did not have the opportunity to "question Mr. Crabtree or Plaintiff's expert Mr. Fielder about the veracity of the photographs and the effect the putative pre-damage photographs would have on this case." (Doc. 38, at 7).[1] Defendant also states that that Plaintiff intends to "introduce a multitude of evidence that was obtained after October 30, 2015." (Doc. 38, at 8). This evidence relates to repairs made to the subject aircraft.

Rule 16(f)(1)(C), states, in pertinent part, that "on motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." The listed sanctions from Rule 37(b)(A)(ii)-(vii) are

> (**ii**) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (**iii**) striking pleadings in whole or in part;
> (**iv**) staying further proceedings until the order is obeyed;
> (**v**) dismissing the action or proceeding in whole or in part;
> (**vi**) rendering a default judgment against the disobedient party; or
> (**vii**) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Rule 16(f)(2) states that "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

In determining what sanction to impose, this Court will consider:

---

[1] Defendant also maintains that it is "greatly prejudice[ed]" because it prevented "Defendant from adequately obtaining information at depositions regarding the relevant information and from adequately preparing for trial." (Doc. 38, at 9).

> (1) the party's explanation for the failure to obey the order, (2) the importance of the [evidence], (3) the prejudice to the opposing party, (4) the availability of lesser sanctions, (5) the interest in expeditious resolution of the litigation, (6) the Court's need to manage its docket, and (7) the public policy favoring disposition of cases on the merits.

*Boles v. United States*, No. 1:13CV489, 2015 WL 1508857, at *6 (M.D.N.C. Apr. 1, 2015). "The primary focus of the Rule 16(f) analysis is 'whether [the disobedient party] has shown good cause for its failure to timely disclose.'" *Severn Peanut Co. v. Indus. Fumigant Co.*, No. 2:11-CV-00014-BO, 2014 WL 198217, at *3 (E.D.N.C. Jan. 15, 2014).

Defendant also maintains that Plaintiff has violated Rule 26(e)'s supplementation requirements. In general, Rule 26(e) requires a party to supplement responses to interrogatories and requests for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). When a party fails to supplement, "the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to the total prohibition of the introduction of said evidence or *instead* of the total exclusion,[2] the court may shift expenses or "impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." The additional sanction referenced in this rule is to "direct[] that all matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i). In determining whether the failure to disclose is substantially justified or harmless, courts consider similar factors as those listed under above.

---

[2] *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006)

3

*See S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 5967 (4th Cir. 2003); *SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2013 WL 5592808, at *4 n. 9 (E.D.N.C. Oct. 10, 2013) (result would be the same under either set of factors).[3] Finally, "Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules." *S. States*, 318 F.3d at 596.

        A.        Pre-Accident Photographs

The records submitted by Defendant indicate that Plaintiff had possession, custody, and/or control of some of the subject photographs as early as August 3, 2012. Specifically, an email shows that many of these photographs were emailed to Mr. Crabtree by his employee, Dale Clark, on August 3, 2012. *See* (Doc. 38-4, at 1). The photos were embedded in the email, *see* (Doc. 38-4, at 2-24), which means that the metadata was stripped before coming into Mr. Crabtree's hands. *See* (Doc. 38-3, at ¶ 10). Apparently Clark provided counsel for Plaintiff an additional three CDs worth of pictures on April 27, 2016. (*Id.* at 25). Counsel for Plaintiff also provided Defendant and his forensic expert an additional set of pictures from July and August 2012. *See* (Doc. 38-4, at 25-32). Defendant's expert avers that the meta-data confirms that they were taken between July and August 2012. (Doc. 38-3, at ¶ 12).

The record shows that Defendant repeatedly asked for discovery (although not specifically for pre-accident photographs). *See* (Doc. 19). Counsel for defense propounded the following interrogatory: "Please identify any and all . . . photographs . . . or other depictions that either

---

[3] These factors are:
        (1) the surprise to the party against whom the evidence would be offered;
        (2) the ability of that party to cure the surprise;
        (3) the extent to which allowing the evidence would disrupt the trial;
        (4) the importance of the evidence; and
        (5) the nondisclosing party's explanation for its failure to disclose the evidence.
*S. States.*, 318 F.3d at 597 .

Plaintiff or Plaintiff's counsel has in their possession or of which You are aware related to damages claimed by Plaintiff in the Complaint." (Doc. 19-1, at 6). Defense counsel asked for production of "all documents Identified in Your responses" and "any and all photographs . . . that Plaintiff contends supports its claims for damages" and "any and all . . . photos . . . You have in Your possession with regard to the matters alleged in the Complaint." (Doc. 19-1, at 10, 13, 21). Later emails show a suspicion that Plaintiff's principal, Barry Crabtree, failed to perform an adequate search for these records. These suspicions were confirmed at trial when Crabtree stated "I didn't have all those photographs at one time. I - - I'm not good at finding emails and finding those photographs. But I did finally find them." When asked later about why he did not produce these pictures earlier, Crabtree stated "I would have produced them sooner but I just didn't find them." Crabtree admitted that he had, at the very least, a majority of the pictures sought to be excluded in his email as early as 2012. Crabtree stated "I didn't know where they were until I just kept digging and digging. I'm not that great at emails and finding things." There were multiple instances during trial where Crabtree referred to matters never produced discovery. His response to why he failed to produce them was always that he "looked and looked and looked" but only found them at the eve of trial.[4]

Defendant complains that it "was never afforded the opportunity to ask Mr. Crabtree in a discovery deposition under oath when the photographs were taken, where they were taken, where they were found, how long they had them available to him, why he failed to produce them in response to the June 2015 discovery requests and why there is no metadata preserved on each digital file." (Doc. 38, at 12). Defendant states that these photographs are crucial to the only issue in this case, the amount of damages. *Id.* at 13. Counsel for Defendant proceeded through discovery

---

[4] For example, Crabtree testified about numerous oral purchase offers for the Falcon at trial, one of which was apparently memorialized in a written document that he failed to produce because he is "not too good at emails."

under the impression that no pre-impact photographs existed. *Id.* Defendant argues that these photographs may bear on the outcome or extent of damages. *Id.* Defendant maintains that it cannot accept any lesser sanction, such as a delay in trial for the purpose of additional discovery, "even if the costs were taxed against the Plaintiff, because the interest on any judgment against it would be increased." *Id.* at 14. Defendant later claims that the only way to cure the surprise resulting from the arrival of these photographs "would be to allow additional discovery . . . on the issue of the actual origin of the photographs and the reason for the unreasonable delay in production." *Id.* at 18.

Plaintiff states that: "[p]rior to the close of discovery, Plaintiff never knew that the Defendant needed – nor did Plaintiff realize the relevance – of pre-damage photographs." (Doc. 52, at 2).

Plaintiff has not offered a legitimate explanation for why it failed to produce the photographs.[5] In fact, Crabtree fails to offer any explanation for his failure to find the photographs. These photographs surfaced well after the discovery period closed. Somewhat fortuitously, they surfaced in time to be used during Plaintiff's expert witness deposition, around three months before trial began. Judge Reidinger aptly stated the problem with disclosing evidence at the eleventh hour: "All of the parties' technical experts have now been deposed . . . . Submission of [new photographs] would require the parties to undergo the expense of additional rounds of depositions and supplemental reports and briefing, which would be completely disruptive to the trial schedule of this case." *BorgWarner, Inc. v. Honeywell Int'l, Inc.*, 750 F. Supp. 2d 596, 606 (W.D.N.C. 2010). Of course, the importance of these photographs is far less than the excluded expert in

---

[5] The Court notes for the record that there is no indication that Plaintiff's attorneys were at fault for the late disclosure. Every indication in the record shows that Plaintiff's attorneys were just as surprised as counsel for Defendant when Crabtree produced said photographs.

6

*BorgWarner*. Counsel for Plaintiff did use these photographs to cross-examine Defendant's expert witness Henderson.[6][7][8][9] Henderson issued his expert report on September 15, 2015. The discovery that should have resulted in the production of these photographs was propounded on June 5, 2015. (Doc. 19-1, at 20). Henderson's report appears to show that counsel for Defendant supplied him with much of the discovery provided at that time and he testified to the same at trial. After hearing the testimony and considering the arguments, the Court concludes that Plaintiff's failure to supply the photographs at the appropriate time warrants a sanction. The Court will exercise its discretion not to totally exclude the photographs, however. In so holding, the Court reiterates the statement it made at the beginning of the trial. The photographs were not critical to the outcome to the case. However, the Court is concerned with Plaintiff's use of the photographs as a means to establish the interior condition of the aircraft and as a means to cross-examine Defendant's expert. Accordingly, the Court will impose the lesser sanction of refusing to consider the photographs of

---

[6] Q. Okay but I'm asking if you asked her for any photographs of the airplane? Did you ask her?

A. I don't recall, no.

[7] Q. In using your numbers for the pre-tail strike value, my understanding from your testimony is you didn't have access to -- you didn't have photos preaccident. And you didn't -- did you have any way of determining when the water damage to the aircraft occurred?

A. I do not.

[8] Q. I put up on the monitor I think everybody can see it is plaintiff's 130-230 which Mr. Henderson I'll represent to you is a photograph taken a couple of years before the tail strike. Do you see any water damage on those -- on that photograph.

. . .

A. I do not but the quality of this picture that I have is not very good I can't -- I don't see anything that like I saw when I inspected the aircraft. But it's not a very high res photo.

[9] Q. Would photographs help you determine the condition of the paint?

7

the interior of the plane. The Court <u>did not</u> consider the photographs as evidence of the interior of the before the accident.

        B.        Evidence of Repairs

Defendant argues that Plaintiff should be prohibited from supplementing it's Pretrial Disclosures with evidence of recent repairs and that said evidence should be excluded. Plaintiff states that "[t]here is no reason the repairs could not have been accomplished before the close of discovery, and repair invoices provided to Defendant." (Doc. 38, at 15). Defendant continues: "[t]here is no reason [why] Plaintiff waited until <u>less than 30 days before trial</u> to demand to move the Falcon from the Statesville Airport after it had been there since the accident on September 5, 2013, over 2 ½ years ago." *Id.* at 15-16. Defendant maintains that "<u>6 months after the close of discovery</u>, Plaintiff is supposedly obtaining 'new evidence' for the purpose of introducing 'invoices for temporary repair and relocation of the aircraft,' again without allowing Defendant any opportunity in discovery to review, analyze, investigate, corroborate, or challenge the purported evidence." *Id.* at 16. At the time of filing of the motion, Defendant had yet to be provided with this new information. The circumstances surrounding the removal of the Falcon are revealed in the record, (Doc. 52-6) and trial. The Falcon sat on the Tarmac for almost two years before Plaintiff began preparations to have it removed on April 19, 2016, a month before trial.[10] Plaintiff utilized the services of Phoenix Rising Aviation, Inc. to place loaner parts on the Falcon and obtain a ferry permit from the Federal Aviation Administration ("FAA"). The Falcon was ultimately flown to Little Rock, Arkansas. The evidence resulting from this course of affairs simply is not prejudicial enough to Defendant to warrant sanctions. Plaintiff could have attempted to repair the Falcon long before April 2016; however, the result of the Findings of Fact,

---

[10] Presumably the Court could have conveniently viewed the Falcon had Plaintiff left it for an additional month.

Conclusions of Law, and Judgement is that the damage that occurred after the impact in September was caused by Plaintiff's failure act as a responsible aircraft owner and not from the original negligence. Moreover, the Court has held that Crabtree's testimony concerning the extent of the damage sustained is not credible. Further, the testimony regarding airworthiness was credible. The mere fact that an airplane does not fall out of the sky when it takes off does not mean that it complies with FAA airworthiness requirements.

Finally, Defendant's cross-examination undermined the credibility of the documents generated. For example, to receive a special flight permit one must provide the reason <u>why</u> a permit is needed in the first place. In this case, the only reason given for why the Falcon <u>was not airworthy</u> was because it did not have a C Check. Moreover, the repairs performed by Phoenix Aviation <u>did not</u> generate a Form 337. The FAA requires a Form 337 to be filled out to memorialize a major damage repair or a major alteration. The demarcation between a major repair and a minor repair is clear under FAA regulations. The Log Book Entry generated by Phoenix Rising Aviation, Inc. also shows that this evidence is not highly prejudicial. For example, Phoenix Rising Aviation, Inc. performed a host of tests on the Falcon, which is understandable given the lack of maintenance on the aircraft. The Log Book also indicates that two vertical leading edges were removed and two serviceable leading edges were installed. The Log Book indicates that the Falcon was returned to service and that, despite an inspection of the vertical fin forward spar and surrounding structure, no other damage was noticed. The Court is aware of the inconsistency between the Log Book and the Invoice generated by the work. However, the Invoice itself is not itemized. The work was for the "flat rate" of $93,000.00 to "Send 3 Mechanics to Statesville, NC to remove damaged parts . . . . Replaced damaged parts, and operational checked aircraft for Ferrying." The Court questions the reasonableness of this price if Plaintiff is attempting to use

9

this document to state that the parts were "loaner" in that a separate payment would be required for permanently installed parts given the fact the three non-Dassault estimates were for $126,825.00, 124,871.00, and $99,840.00. The parties will notice that much of foregoing recitation concerns testimony elicited by Defendant's expert, Sammy Bereznak, who is the subject of a motion to exclude by Plaintiff. The late production of these documents further accentuated the need for his expert opinion.

The previous discussion shows that the Court, in weighing the evidence, did not find the Phoenix Aviation records overwhelmingly persuasive. The Court sees no reason to impose a sanction prohibiting the introduction of these documents. As an owner of an aircraft, Plaintiff needed to proceed with maintenance in order to maintain its value. Moreover, this is not a case where highly critical evidence was sprung on a party after the close of discovery. Accordingly, for the foregoing reasons, the Court finds that the late production was substantially justified, harmless, and the circumstances do not warrant a sanction.

Accordingly, the motion is **DENIED** with respect to these records.

Also pending are the challenges to the experts Allen J. Fielder (Doc. 35) and Sammy Bereznak (Doc. 47). These motions are **DENIED** for good cause shown.

**SO ORDERED.**

Signed: July 22, 2016

Richard L. Voorhees
United States District Judge